# United States Court of Appeals
## For the First Circuit

No. 04-1009

UNITED STATES OF AMERICA,

Appellee,

v.

OMAR RIVERA-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez Giménez, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Lisi,* District Judge.

Lisa Aidlin, for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney,
with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, were on brief,
for appellee.

May 31, 2007

---

* Of the District of Rhode Island, sitting by designation.

**LISI, <u>Chief District Judge</u>**. Defendant-appellant Omar Rivera-Rodríguez ("Rivera-Rodríguez") appeals from his sentence of 121 months imprisonment for conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1). Finding his assignments of error to be without merit, we affirm Rivera-Rodríguez's sentence.

                                I.

Rivera-Rodríguez was a member of a drug-trafficking organization that sold cocaine, crack cocaine, heroin, and marijuana at "drug points" in and around Guayama, Puerto Rico. On September 26, 2002, following a two-year investigation by federal and local law enforcement agencies, a federal grand jury returned a two-count indictment against Rivera-Rodríguez and forty-two co-defendants. Count One of the indictment alleged that from approximately April 28, 1993, to September 26, 2002, the defendants conspired to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[1]

According to the indictment, Rivera-Rodríguez supplied heroin and cocaine to the drug-trafficking organization. He is one of only two suppliers identified in the indictment. At a detention hearing on October 11, 2002, the government described Rivera-

---

[1] Count Two (a property forfeiture charge) was dismissed as to Rivera-Rodríguez and, consequently, is not a subject of this appeal.

Rodríguez's role in the conspiracy as "significant." When asked about the quantity of drugs he had supplied to the organization at any given time, the government responded that:

> [Rivera-Rodríguez] has been involved since approximately 1992 or 1993 and . . . he has supplied kilogram quantities, perhaps not one kilo each time there's a drug transaction, perhaps half a kilo quantities, perhaps quarter of a kilo or eighth of a kilo quantities. But we're not talking grams here. We're talking kilo or portion of kilo quantities of both cocaine and heroin.

At a bail review hearing on January 29, 2003, the government again characterized Rivera-Rodríguez's role in the conspiracy as "substantial" and "significant." The government described Rivera-Rodríguez as a "major cocaine supplier" and informed the magistrate judge that it had three or four witnesses who had provided information that Rivera-Rodríguez was a "main supplier to the organization." The government indicated that Rivera-Rodríguez was "involved in the upper echelons of the organization," and that he had delegated authority to others to make transactions on his behalf. The government also introduced an organizational chart and asserted that Rivera-Rodríguez acted as the "right hand" of the leader of the organization.

On July 15, 2003, Rivera-Rodríguez pleaded guilty pursuant to a plea agreement with the government. The parties agreed that Rivera-Rodríguez would be held responsible for 3.5 to 5 kilograms of cocaine, which yielded a base offense level of 30 under U.S.S.G. § 2D1.1(c)(5). The parties also stipulated that Rivera-Rodríguez

would receive a two-level increase for his role in the offense as "an organizer, leader, manager, or supervisor" pursuant to U.S.S.G. § 3B1.1(c), and a two-level decrease for his acceptance of responsibility under U.S.S.G. § 3E1.1.

The parties anticipated a Criminal History Category of I, making the applicable sentencing range 97 to 121 months. Although the plea agreement warned Rivera-Rodríguez that his sentence was "within the sound discretion of the sentencing judge," the parties agreed that the government would recommend 121 months of incarceration, while Rivera-Rodríguez would request 97 months.

The presentence report ("PSR") adopted the guideline calculations agreed to by the parties in the plea agreement.[2] The PSR described Rivera-Rodríguez as "the cocaine and marihuana supplier to the organization." Notably, the PSR stated that, as one of the suppliers to the drug-trafficking organization, Rivera-Rodríguez was "more culpable" than those members of the conspiracy who sold the narcotics. The PSR also noted that under the terms of the plea agreement, Rivera-Rodríguez had "pled guilty in exchange for the stipulation of a lesser drug amount."

At the sentencing hearing on November 7, 2003, the court accepted the guideline calculations agreed to by the parties and

---

[2] Although not contemplated in the plea agreement, the PSR also included a two-level increase to Rivera-Rodríguez's base offense level for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). Rivera-Rodríguez objected, however, and the enhancement was eventually removed from the PSR.

adopted by the PSR. Defense counsel asked the court to sentence Rivera-Rodríguez to the low-end of the guideline range, or 97 months. In support of this request for a sentence at the low-end of the guideline range, defense counsel noted that Rivera-Rodríguez had a long-term, stable marriage and a six-year-old daughter. Counsel also argued that, despite having only a ninth grade education, Rivera-Rodríguez had worked as a land surveyor, and had owned and operated a small grocery store since 2000. Defense counsel informed the court that she had information that a witness at the trial of several of Rivera-Rodríguez's co-defendants had "testified to the fact that after [Rivera-Rodríguez] engaged in his [grocery] business, he withdrew from the conspiracy."

In arguing for the low-end of the guideline range, defense counsel also asserted that the pre-trial discovery provided by the government showed that Rivera-Rodríguez was only a "peripheral supplier." Defense counsel stated that "the evidence against [Rivera-Rodríguez] consisted of two or three witnesses saying that he had supplied 8ths and 4ths [of a kilogram], and that is the reason why the quantity of 3.5 to 5 kilograms of cocaine was stipulated [to] in the plea agreement."

In closing, defense counsel observed that Rivera-Rodríguez was a first-time offender and had shown a willingness to rehabilitate. She also noted that he "was one of the first defendants to come forward and accept his responsibility." Accordingly, defense

counsel asked the court to consider a sentence at the low-end of the guideline range.

The government, on the other hand, asked the court to sentence Rivera-Rodríguez to the high-end of the guideline range. The government stated:

> As [y]our Honor knows well, having presided over the [two] month trial [of several co-defendants], there were numerous drug points, between Guayama and Salinas, at least ten. The drugs had to come from somewhere, [y]our Honor, I believe the court heard testimony that there were numerous sources, one being one of the defendants that stood trial and one being the man that stands here before you. . . . I submit that the testimony, [pre-trial discovery], and all [of] the evidence that the government has and presented at trial indicates that were this defendant to go to trial, the government would be seeking a [base offense] level [of] 38 to start with. In this case we are seeking a much lower amount.
>
> There were quantities frankly beyond the amount stipulated in the plea agreement and I submit that the government is bound by the plea agreement to recommend a maximum of 121 months . . . I would ask the court to impose the sentence that the government now recommends.

Defense counsel countered that the quantity of drugs that had been stipulated to in the plea agreement was based on the pre-trial discovery she had received from the government.

The court imposed a 121-month sentence, stating that it had "taken into consideration all of the elements in the presentence report[,] including the nature of the offense and all [of] the testimony that the court received . . . in the course of trial." Defense counsel objected, asking the court to reconsider in light of the court's reliance on trial testimony. The court explained:

-6-

I said in the nature of the offense and my recollection
of the testimony at trial.  You are talking about 8ths
and quarters, that was for a long time that cocaine was
being supplied.  So the amount of 3.5 from the evidence
that I recall, is more than, I would say more than
generous.

Defense counsel responded:

But the question is as it pertains to him.  I was not
privy to that information and I don't think it is fair
that I am standing here requesting . . . the . . . lower
end of the guideline [range] and then not have that
information to be able to refute that.  I am sure there
were other suppliers in the indictment.

The court declined to reconsider:

Counsel, the sentence at the lower or upper end of the
guideline range is discretionary.  Taking into
consideration the presentence report, the position of
this defendant within the organizational chart which you
knew, you had, [and] all [of] the evidence that I have
before me.  I am exercising my discretion and sentencing
[Rivera-Rodríguez] to the upper end.

Defense counsel expressed her concern that the court was not
taking into consideration Rivera-Rodríguez's employment history or
status as a first-time offender.  The court noted, however, that
"one of the main purposes of sentencing considerations now under
this Congress, under these sentencing guidelines[,] is deterrence
and punishment," and explained that the court had considered the
factors cited by defense counsel "by not doing [its] own sentencing
guideline calculation and imposing a much higher guideline [sic]
based on the evidence that [it had]."

II.

Rivera-Rodríguez assigns three errors on appeal.  First, he

-7-

contends that the district court erred by failing to give him notice that the court intended to rely on testimony from his co-defendants' trial in deciding where to sentence him within the guideline range. Second, Rivera-Rodríguez argues that the government breached its plea agreement with him by urging the court to impose a higher sentence than that which the government agreed to recommend, and by arguing that he was responsible for a quantity of cocaine greater than the amount stipulated. Finally, Rivera-Rodríguez claims that the court erred by imposing a two-level increase for his role in the offense pursuant to U.S.S.G. § 3B1.1(c), and asks that his case be remanded to the district court for resentencing under United States v. Booker, 543 U.S. 220 (2005). We will address each argument in turn.

### A. Notice

In arriving at an appropriate sentence, a district court enjoys "broad discretion in the information it may receive and consider regarding [a] defendant and his conduct." United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991) (citations omitted); see 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). In exercising this discretion, the district court is free to consider information from a trial proceeding at which the

defendant was not present. See United States v. Rios, 893 F.2d 479, 481 (2d Cir. 1990) (citing United States v. Romano, 825 F.2d 725, 728 (2d Cir. 1987)); see also United States v. Blackwell, 49 F.3d 1232, 1236 (7th Cir. 1995) (collecting cases). It is well established, however, "that a convicted defendant has the right to be sentenced on the basis of accurate and reliable information, and that implicit in this right is the opportunity to rebut the government's evidence and the information in the presentence report." Blackwell, 49 F.3d at 1235 (citation omitted). The Supreme Court has explained that Fed. R. Crim. P. 32, which addresses sentencing and judgment, "contemplates full adversary testing of the issues relevant to a [g]uidelines sentence and mandates that the parties be given 'an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'" Burns v. United States, 501 U.S. 129, 135 (1991) (quoting Fed. R. Crim. P. 32).

In United States v. Berzon, 941 F.2d 8 (1st Cir. 1991), we emphasized "that a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based." Id. at 10. At issue was defendant Robert Berzon's claim that the district court had based its upward adjustment of his base offense level on testimony from a co-defendant's sentencing hearing that neither Berzon nor his attorney had attended. The testimony offered new and substantial

-9-

information about Berzon's role in the offense as a leader or organizer under U.S.S.G. § 3B1.1(c).  Berzon contended, however, that he had no knowledge of the damaging testimony at the time of his own sentencing.  In finding that a defendant must be provided with notice before such information is considered, we concluded that "a defendant may not be placed in a position where, because of his ignorance of the information being used against him, he is effectively denied an opportunity to comment on or otherwise challenge material information considered by the district court." Id. at 21; see Burns, 501 U.S. at 136 ("'Th[e] right to be heard has little reality or worth unless one is informed' that a decision is contemplated.") (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Because it was unclear from the record, however, whether the district court had considered the undisclosed information, we remanded the case to the original sentencing judge with directions that he indicate whether he had materially relied on this information in sentencing Berzon.  Berzon, 941 F.2d at 10.  If the sentencing judge answered affirmatively, we ordered that Berzon's sentence be vacated, and Berzon be resentenced by a different district judge.  Id.

On appeal, Rivera-Rodríguez relies heavily on this court's decision in Berzon, arguing that Berzon requires us to vacate his sentence and remand for resentencing.  According to Rivera-

Rodríguez, the district court erred when it failed to notify him that it would rely on testimony from his co-defendants' trial in deciding where to sentence him within the guideline range. He claims that he had no knowledge of the prior trial testimony and argues that he was blind-sided by the contention that he was a significant supplier of drugs to the conspiracy. As a result, Rivera-Rodríguez argues that he was denied the opportunity to challenge and rebut the court's reliance on such information in violation of Fed. R. Crim. P. 32 and his right to due process under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[3]

Rivera-Rodríguez's reliance on Berzon, however, is misplaced. One of our concerns in Berzon was that the undisclosed testimony at issue contained new and significant information about Berzon's role in the offense - information that was nowhere in the record and which Berzon had no opportunity to challenge. Id. at 17. The same can not be said here. At the sentencing hearing on November 7, 2003, defense counsel argued that her client was a "peripheral supplier," who had only supplied "8ths and 4ths" of a kilogram of cocaine. The court, however, was not persuaded. In imposing a sentence of 121 months, the sentencing judge made a general, and

---

[3] Although Rivera-Rodríguez relies, in part, on the due process clause of the Fourteenth Amendment, we note that the Fourteenth Amendment applies only to the states. Bolling v. Sharpe, 347 U.S. 497, 498-99 (1954).

somewhat vague, reference to "all [of] the testimony that the court received . . . in the course of trial." When defense counsel objected to this remark, the court clarified:

> I said in the nature of the offense and my recollection of the testimony at trial. You are talking about 8ths and quarters, that was for a long time that cocaine was being supplied. So the amount of 3.5 from the evidence that I recall, is more than, I would say more than generous.

Based on this exchange, it is clear that the district court mentioned the testimony it had heard at trial to emphasize that the court was familiar with both the length of time the conspiracy had operated and the quantity of drugs that had been involved. By doing so, the sentencing judge was responding to defense counsel's argument that her client was a "peripheral supplier," who had supplied only small amounts of cocaine.

This information was hardly new to Rivera-Rodríguez and his counsel. See id. (requiring notice when a court expects to consider "new information" from a separate proceeding). The length of the conspiracy and quantity of drugs involved were set forth in the indictment, plea agreement, and PSR. The PSR noted that under the terms of the plea agreement, Rivera-Rodríguez had "pled guilty in exchange for the stipulation of a lesser drug amount." Indeed, this information was at the heart of the government's argument that Rivera-Rodríguez was a "significant" supplier of cocaine. At his detention hearing, three days after Rivera-Rodríguez was arrested, the government was asked about the quantity of drugs Rivera-

Rodríguez had supplied at any given time.  The government responded

that:

> [Rivera-Rodríguez] has been involved since approximately
> 1992 or 1993 and . . . he has supplied kilogram
> quantities, perhaps not one kilo each time there's a drug
> transaction, perhaps half a kilo quantities, perhaps
> quarter of a kilo or eighth of a kilo quantities.  But
> we're not talking grams here.  We're talking kilo or
> portion of kilo quantities of both cocaine and heroin.

Notably, this is the same type of information that the court would

later rely on at Rivera-Rodríguez's sentencing.  Any factual

information from the trial to which the court may have been

referring, therefore, was neither new nor absent from the record.

Furthermore, we are not persuaded by Rivera-Rodríguez's claim

that he did not have a meaningful opportunity to respond to such

information.  Although Rivera-Rodríguez contends that he was blind-

sided by the assertion that he was a "significant" supplier, the

government consistently maintained, throughout the proceedings

below, that Rivera-Rodríguez was a "main supplier to the

organization."  At the bail review hearing on January 29, 2003, the

government referred to Rivera-Rodríguez as a "major cocaine

supplier."  In fact, even as early as the detention hearing on

October 11, 2002, the government had described his role as a

supplier to the organization as "significant."

At the sentencing hearing, defense counsel anticipated this

argument from the government, stating that she was "sure the

government [was] going to get up and say [her client] was one of

-13-

the main suppliers." In an attempt to counter this claim, defense counsel argued that her client was only a "peripheral supplier," minimizing the quantity of drugs that Rivera-Rodríguez had supplied. Thus, Rivera-Rodríguez clearly was on notice that this information was at issue during his sentencing, and he was given an opportunity to rebut it.

Moreover, there is no indication from the record that the sentencing judge materially relied on any undisclosed testimony in deciding where to sentence Rivera-Rodríguez within the guideline range. Id. at 10. In imposing a sentence at the high-end of the guideline range, the district court stated that it had "taken into consideration all of the elements in the presentence report[,] including the nature of the offense and all [of] the testimony that the court received . . . in the course of trial." After defense counsel challenged the court's reliance on the trial testimony, the court corrected her:

> Counsel, the sentence at the lower or upper end of the guideline range is discretionary. Taking into consideration the presentence report, the position of this defendant within the organizational chart which you knew, you had, [and] all [of] the evidence that I have before me. I am exercising my discretion and sentencing [Rivera-Rodríguez] to the upper end.

Despite Rivera-Rodríguez's arguments to the contrary, it is clear from these comments that the district court did not materially rely on any specific testimony from the trial. Instead, as discussed above, the court made a general reference to the trial for the

limited purpose of highlighting the length of the conspiracy and the amount of drugs involved. See United States v. Fuentes-Moreno, 895 F.2d 24, 26 (1st Cir. 1990) (finding no error in district court's "general reference" to the trial of Fuentes-Moreno's co-defendants in imposing sentence). Although the court mentioned trial testimony in deciding where to sentence Rivera-Rodríguez within the guideline range, the sentencing judge relied on record evidence, i.e., evidence that Rivera-Rodríguez was well aware of and had an opportunity to challenge and rebut at his sentencing. Accordingly, under these circumstances, we find no error.

## B. Plea Agreement

Rivera-Rodríguez also argues that the government breached the plea agreement between the parties by urging the district court to impose a higher sentence than that which the government agreed to recommend, and by arguing that he was responsible for a quantity of cocaine greater than the amount stipulated. Specifically, Rivera-Rodríguez claims that the government breached the plea agreement by asking the court to find a base offense level of 38, as opposed to the level 30 contemplated by the agreement, and by stating that "[t]here were quantities [of cocaine] frankly beyond the amount stipulated [to] in the plea agreement . . . ." Again, however, we disagree.

The plea agreement between the parties stipulated that Rivera-Rodríguez would be held responsible for 3.5 to 5 kilograms of

-15-

cocaine, yielding a base offense level of 30 under U.S.S.G. §
2D1.1(c)(5). The parties assumed that Rivera-Rodríguez would be
found to have a Criminal History Category of I, making the
applicable guideline range 97 to 121 months. Although the plea
agreement warned Rivera-Rodríguez that his sentence was "within the
sound discretion of the sentencing judge," the agreement provided
that the government would recommend 121 months of imprisonment,
while Rivera-Rodríguez would request 97 months.

Following defense counsel's argument for the low-end of the
guideline range at the sentencing hearing, the government "ask[ed]
the court to impose the higher end of the sentencing guidelines,
that being 121 months . . . ." In support of this request, the
government referred to the two-month trial of Rivera-Rodríguez's
co-defendants, and stated that:

> all [of] the evidence that the government has and
> presented at trial indicates that were this defendant to
> go to trial, the government would be seeking a [base
> offense] level [of] 38 to start with. In this case we
> are seeking a much lower amount.
>
> There were quantities frankly beyond the amount
> stipulated in the plea agreement and I submit that the
> government is bound by the plea agreement to recommend a
> maximum of 121 months . . . . I would ask the court to
> impose the sentence that the government now recommends.
> (emphasis supplied).

Ordinarily, whether the government has breached its plea
agreement with a defendant is a question of law and our review is
plenary. See United States v. Doe, 233 F.3d 642, 643-44 (1st Cir.
2000) (citing United States v. Clark, 55 F.3d 9, 11 (1st Cir.

1995)); United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992). Where as here, however, the "defendant has knowledge of conduct ostensibly amounting to a breach of a plea agreement, yet does not bring that breach to the attention of the sentencing court, we review only for plain error." United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000). Thus, we consider whether: (1) there was error, (2) it was plain, (3) the error affected the defendant's substantial rights, and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993); Saxena, 229 F.3d at 5.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971); see United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002); Saxena, 229 F.3d at 5-6. Because defendants must ultimately waive fundamental rights as a result of entering into any plea agreement, "we hold prosecutors engaging in plea bargaining to 'the most meticulous standards of both promise and performance.'" Riggs, 287 F.3d at 224 (quoting United States v. Velez Carrero, 77 F.3d 11, 11 (1st Cir. 1996)). This requirement prohibits, therefore, "not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them."

-17-

United States v. Voccola, 600 F.Supp. 1534, 1537 (D.R.I. 1985), quoted in United States v. Frazier, 340 F.3d 5, 10 (1st Cir. 2003); Saxena, 229 F.3d at 6; Canada, 960 F.2d at 269.

The plea agreement expressly provided that the government would recommend a sentence at the high-end of the guideline range. This is exactly what it did. The government asked the court to impose a sentence of 121 months, not once, but twice during the course of its argument. Cf. Canada, 960 F.2d at 268 (finding that although "the Assistant United States Attorney informed the court of the plea agreement and noted the existence therein of the government's promise to recommend only 36 months of incarceration, she never herself affirmatively recommended a 36 month sentence") (emphasis supplied). Indeed, the government indicated that it was "bound by the plea agreement to recommend a maximum of 121 months." Thus, the government did not technically violate the terms of the plea agreement. See Frazier, 340 F.3d at 12.

The government, however, "cannot rely on mere technical compliance, and adherence to the terms of a plea agreement 'requires more than lip service on a prosecutor's part.'" Id. (quoting Saxena, 229 F.3d at 6). Although the government recommended a sentence of 121 months, it also informed the court that if the government had been forced to go to trial it would have sought a base offense level of 38. Moreover, as noted, the government stated that "[t]here were quantities [of cocaine]

frankly beyond the amount stipulated [to] in the plea agreement."
Rivera-Rodríguez, therefore, argues that the government violated
the spirit, if not the letter, of the plea agreement.

Although the government's conduct here is somewhat troubling,
we do not believe that these statements rise to the level of plain
error.  Despite the government's statement that it would seek a
base offense level of 38 <u>if</u> it were forced to go to trial, the
government reiterated that under the circumstances, it was "seeking
a much lower amount."  Furthermore, having explicitly stated that
it was recommending a sentence at the high-end of the guideline
range, the government was free to offer reasons in support of that
recommendation.  <u>See</u> <u>United States</u> v. <u>Queensborough</u>, 227 F.3d 149,
157 (3rd Cir. 2000).  Thus, the government argued that Rivera-
Rodríguez was a significant supplier of cocaine, and that "[t]here
were quantities frankly beyond the amount stipulated [to] in the
plea agreement."  It offered these reasons in response to defense
counsel's argument that her client was a peripheral supplier, and
in support of the government's request for a sentence at the high-
end of the guideline range.  Accordingly, under these
circumstances, we can not say that the government's conduct at
Rivera-Rodríguez's sentencing rises to the level of plain error.

C.  Role Enhancement and <u>Booker</u> Remand

Finally, Rivera-Rodríguez argues that the district court erred
by imposing a two-level increase for his role in the offense

-19-

pursuant to U.S.S.G. § 3B1.1(c). Although he concedes that he stipulated to his role in the offense as an "organizer, leader, manager, or supervisor," Rivera-Rodríguez contends that there was insufficient evidence in the record to support the sentencing judge's determination that the enhancement was warranted.[4] Additionally, Rivera-Rodríguez asks that his case be remanded to the district court for resentencing under United States v. Booker, 543 U.S. 220 (2005), on the ground that there is a reasonable probability of a lower sentence under an advisory guidelines system. These arguments may be quickly dispatched.

1. Role Enhancement

At the bail review hearing on January 29, 2003, the government indicated that Rivera-Rodríguez was "involved in the upper echelons of the [drug-trafficking] organization," and had delegated authority to others to make transactions on his behalf. The government also introduced an organizational chart of the conspiracy and asserted that Rivera-Rodríguez had acted as the "right hand" of the leader of the organization. According to the

---

[4] Rivera-Rodríguez also argues that the court erred by imposing a two-level increase in his base offense level under U.S.S.G. § 3B1.1(c), without proof beyond a reasonable doubt, in violation of Blakely v. Washington, 542 U.S. 296 (2004). This argument, however, is clearly baseless. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005) ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

plea agreement, therefore, Rivera-Rodríguez received a two-level increase in his base offense level for his role in the offense as an "organizer, leader, manager, or supervisor" pursuant to U.S.S.G. § 3B1.1(c). At the sentencing hearing, the district court accepted this stipulation and applied the enhancement without making specific findings to support its conclusion. Rivera-Rodríguez did not object. On appeal, Rivera-Rodríguez now argues that there was no factual basis for his enhancement under U.S.S.G. § 3B1.1(c).

Where a defendant fails to object in the district court to a sentencing enhancement, we review that enhancement only for plain error. See United States v. Torres-Velazquez, 480 F.3d 100, 103 (1st Cir. 2007). Ordinarily, defendants should be held to the terms of a plea agreement that they knowingly and voluntarily accept. United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001). A plea agreement is akin to a contract, "binding upon the prosecution and the defense alike." Id. (citing United States v. Ortiz-Santiago, 211 F.3d 146, 151 (1st Cir. 2000). Thus, although stipulations are normally not binding on a district court, should the court decide to accept and act upon a stipulation for sentencing purposes, the parties will usually be firmly bound. Id. at 28. We have acknowledged that:

> [t]his general rule will apply when, for example, a defendant stipulates to a matter of fact or to the applicability of a sentencing guideline (the legal meaning of which is pellucid) to the unique facts of her case. After all, the defendant knows what she has done, and has little cause for complaint if the district court

takes her at her word.

Id. "To hold anything else would be to reduce stipulations to mere inconsequential gestures." United States v. Sandles, 80 F.3d 1145, 1148 (7th Cir. 1996). Moreover, even if Rivera-Rodríguez were not bound by his stipulation, we note that the record clearly supports the district court's determination. See United States v. García-Morales, 382 F.3d 12, 20 (1st Cir. 2004); United States v. Medina, 167 F.3d 77, 80 (1st Cir. 1999). Accordingly, the court's two-level enhancement under U.S.S.G. § 3B1.1(c) was not in error.

2. Booker Remand

Finally, Rivera-Rodríguez contends that his case should be remanded to the district court for resentencing under Booker, on the ground that there is a reasonable probability of a lower sentence under an advisory guidelines system. Rivera-Rodríguez concedes, however, that he did not preserve his claim under Booker; we therefore review only for plain error. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005).

In support of his claim, Rivera-Rodríguez makes three arguments. First, he argues that the district court should not have relied solely on the guideline goals of deterrence and punishment, when under 18 U.S.C. § 3553(a), a number of other factors must now be considered in setting the appropriate sentence. Second, he asserts that the sentencing judge would not have relied on testimony from the trial of Rivera-Rodríguez's co-defendants if

he had known that his sentencing findings had to be supported by proof beyond a reasonable doubt.  Third, Rivera-Rodríguez argues that, under an advisory guidelines system, the district court is now free to consider personal characteristics and other mitigating factors that militate toward a more lenient sentence.

Rivera-Rodríguez, however, "has not shown a reasonable probability - not even a possibility - that the district court would have imposed a different (more lenient) sentence had it understood that the sentencing guidelines were advisory rather than mandatory."  United States v. González-Mercado, 402 F.3d 294, 303 (1st Cir. 2005).  Pre-Booker, a district court was free to consider all of the factors listed in § 3553(a) in determining an appropriate sentence within the applicable guideline range.  The district court, here, noted that two of those factors, deterrence and punishment, were significant factors to be considered.  The court's emphasis on deterrence and punishment, however, does not mean that it did not consider the other enumerated factors in arriving at the appropriate sentence.  In this instance, it only means that the court believed that deterrence and punishment were particularly relevant in Rivera-Rodríguez's circumstances.

Rivera-Rodríguez's second argument, that the district court would not have relied on testimony from the trial of Rivera-Rodríguez's co-defendants had it known that its sentencing findings had to be supported by proof beyond a reasonable doubt, is based on

a false assumption: post-Booker, a district court's sentencing findings need not be supported by proof beyond a reasonable doubt. See Antonakopoulos, 399 F.3d at 75 ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

Rivera-Rodríguez's third argument fails as well. Pre-Booker, a district court had discretion to consider a defendant's personal characteristics in deciding where to sentence the defendant within the guideline range. See, e.g., U.S.S.G. § 5H1.1-12. Indeed, defense counsel argued at the sentencing hearing that Rivera-Rodríguez was a first time offender, had a stable marriage and a substantial job history, voluntarily abandoned the conspiracy well before his arrest, and had undertaken rehabilitation efforts in prison. The district court, however, was not persuaded. Given that the court sentenced Rivera-Rodríguez to the high-end of the guideline range, it is likely that the court would impose the same sentence under an advisory system. See González-Mercado, 402 F.3d at 304 ("When, under a mandatory guidelines regime, a sentencing court has elected to sentence the defendant substantially above the bottom of the range, that is a telling indication that the court, if acting under an advisory guidelines regime, would in all likelihood have imposed the same sentence."). Accordingly, we find

that Rivera-Rodríguez has failed to show a reasonable probability of a more lenient sentence on remand.[5]

III.

For the reasons set forth above, we affirm Rivera-Rodríguez's sentence.

**Affirmed.**

---

[5] Rivera-Rodríguez also argues that his deteriorating mental health condition post-sentencing supports a reasonable probability of a lower sentence on remand. Appellate counsel raised this issue for the first time in her reply brief, but offered no specific information about Rivera-Rodríguez's condition. Where an issue is raised only in a cursory manner, it is waived. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).