# United States Court of Appeals
## For the First Circuit

No. 25-1090

UNITED STATES,

Appellee,

v.

DIEGO FERNÁNDEZ-SANTOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Gelpí, Thompson, and Rikelman,
Circuit Judges.

Samuel P. Carrion, Assistant Federal Public Defender, with whom Rachel Brill, Federal Public Defender, District of Puerto Rico, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appellate Division, and Kevin E. Lerman, Assistant Federal Public Defender, were on brief, for appellant.
Maarja T. Luhtaru, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

May 15, 2026

**RIKELMAN, <u>Circuit Judge</u>.** Diego Fernández-Santos ("Fernández") appeals his sentence for violating the terms of his supervised release. He argues that the government failed to prove the critical fact that drove his sentence, leading the district court to commit a procedural error by looking outside the revocation record to justify the sentence. We agree with Fernández that a procedural error occurred and thus vacate and remand for resentencing.

## I. BACKGROUND

In 2014, Fernández pleaded guilty to multiple federal criminal charges, including possession of a firearm (a compact pistol) by a prohibited person. <u>See</u> 18 U.S.C. § 922(g)(1). The district court sentenced him to over six years in prison for these crimes, followed by three years of supervised release.

In February 2023, after Fernández completed his prison sentence but while he was still on supervised release, he was arrested again. At the time of his arrest, the police seized a rifle and ammunition from a bedroom closet in the house where Fernández was living, as well as a pistol and a gun magazine from a bag that an officer testified he saw Fernández discard outside the house. The officers did not see Fernández near the rifle nor is there any evidence in the record that he had ever handled it.

Fernández's probation officer promptly notified the district court of the arrest and alleged that Fernández had

- 2 -

violated several conditions of his supervised release. One of those conditions prohibited Fernández from "possess[ing] a firearm, ammunition, destructive device, or any other dangerous weapon." After Fernández waived his preliminary revocation hearing, a magistrate judge found probable cause for the alleged violations and referred the case to the district court for a final revocation hearing.

Meanwhile, the government charged Fernández with new criminal conduct based on the arrest -- possession of a firearm by a prohibited person and possession of a machine gun. See 18 U.S.C. § 922(g)(1), (o).[1] As part of his defense against these new criminal charges, Fernández moved to suppress the evidence seized at his arrest. The district court granted his motion in part: It ordered the suppression of the pistol, and other items found in the discarded bag, but not the rifle the police found in a bedroom of the house.

The trial on the new firearm charges against Fernández began in December 2024. At the trial, the government introduced an "expert in the identification of machine guns," Homeland Security Investigations Agent Ariel Pérez-Nieves ("Pérez"). Agent Pérez testified that the rifle seized during Fernández's arrest

---

[1] The initial indictment only charged Fernández with a violation of § 922(g)(1), but in May 2024, a grand jury returned a superseding indictment that also included the § 922(o) charge.

was an "AK-47 style" rifle that functioned as a machine gun, meaning that someone operating the gun could fire multiple rounds with one pull of the trigger. He also explained that the gun had a visible "lever" and three small, unmarked dash lines. According to Agent Pérez, the lever and dash lines indicated that the gun had three possible settings: safety, automatic, and semiautomatic. He pointed out, however, that the rifle would not function as a machine gun unless an automatic sear was installed inside it and a sear pin held that sear in place. He also testified that the sear pin was small but visible, that he could not identify one of the other pins in the rifle, and that all the pins looked "similar." Finally, Agent Pérez explained that the only way he was able to conclude with certainty that the firearm was a machine gun was by firing it.

Five days into the trial, the district court dismissed the new firearm charges against Fernández with prejudice due to discovery violations by the government. With these new charges wiped away, the court scheduled Fernández's final revocation hearing to determine whether he had violated the terms of his supervised release for his 2014 convictions.

In advance of the final revocation hearing, the government filed an Informative Motion with the district court. It contended that Fernández had committed a Grade A violation of his supervised release terms by possessing a "destructive

device" -- a machine gun -- despite his prior felony conviction. See U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 7B1.1(a)(1)(A)(iii) (U.S. Sent'g Comm'n 2024) (defining a Grade A violation as "a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . involves possession of a . . . destructive device," such as a machine gun). It then requested that the court impose the statutory maximum sentence of 60 months.

The government submitted six exhibits, which it attached to the Informative Motion, as evidence of the violations. The exhibits contained excerpts of witness testimony from the suppression hearing and the jury trial on the dismissed § 922(g)(1) and § 922(o) charges against Fernández. The government even highlighted portions of the testimony that it viewed as critical.

Exhibit Six is particularly important. That exhibit consisted of excerpts from the trial testimony of two government experts: Alcohol Tobacco and Firearms Agent Jorge Escribano, an expert in the "identification of firearms," and Agent Pérez. The government included four pages of trial testimony by Agent Escribano. In that testimony, he identified the firearm that was seized during Fernández's arrest as "an AK-type rifle" that "qualif[ies] as a firearm under [f]ederal law" and was "not manufactured in the Commonwealth of Puerto Rico." The government

- 5 -

included only one page of trial testimony by Agent Pérez. That testimony reads:

> Q: Special Agent P[é]rez, showing you Government's Exhibit 22, what is that?
>
> A: It is a rifle, an AK-47 style.
>
> Q: Have you seen that rifle before?
>
> A: Yes, sir.
>
> Q: How do you know?
>
> A: Ah, this rifle was inspected, examined by me. It has the engraving that we did the testing on it.
>
> Q: What was your conclusion once you tested it?
>
> A: It was found to be a -- to operate as a machine gun.

Beyond the exhibits attached to the Informative Motion, the government did not introduce any other evidence to support its allegations that Fernández had violated the terms of his supervised release. It even expressly stated to the district court that it was "resting [its] case on the transcripts" attached to that motion. It also reiterated -- "[j]ust so the record is clear" -- that it had "highlight[ed] excerpts from those transcripts that support [the] allegations" against Fernández.

For his part, Fernández emphasized that it was the government's burden to prove by a preponderance of the evidence each of the supervised release violations that it had alleged, as

- 6 -

well as the grade of those violations. Although Fernández did not contest some of the alleged violations, he vigorously disputed that he knowingly possessed a machine gun. He went on to argue that the government had failed to prove this violation, explaining that the evidence it had submitted with its Informative Motion did not establish that he possessed the "AK-47 style" rifle at all, much less "prove [his] knowledge of the components of that weapon as a machine[ ]gun."

The district court ultimately found that Fernández had engaged in conduct that violated several of his supervised release conditions, including (as relevant here) possessing a rifle. So the court revoked his supervision term. And after "tak[ing] into consideration" the arguments and evidence introduced by the government and Fernández, "including those parts of the Suppression Hearing and the trial, which they mentioned today," the court then found that Fernández "knew that the rifle was a machine[ ]gun" -- meaning that he had committed a Grade A violation. The court also provided its basis for this finding: The firearm "had a visible switch to set the rifle on safety, on semiautomatic firing mode, and on automatic firing mode." This "obvious" "switch" -- combined with Fernández's "familiar[ity] with weapons" given his prior firearm conviction for possession of a compact pistol -- was enough, in the court's view, to find by a preponderance of the evidence that Fernández knowingly possessed

- 7 -

a machine gun. The court proceeded to sentence Fernández to the statutory maximum of 60 months in prison followed by another year of supervised release.

Fernández promptly objected to the procedural and substantive reasonableness of the sentence. In particular, he maintained that the "Government [did] not prove[] Grade A violations" because it did "not prove[] knowledge or mens rea for the characteristics of the machine[ ]gun." The district court overruled his objections.

Fernández timely appealed.

## II. STANDARD OF REVIEW

Because Fernández preserved his arguments as to whether he knowingly possessed a machine gun, we review his challenge to his sentence for abuse of discretion. See United States v. Colón-Maldonado, 953 F.3d 1, 3 (1st Cir. 2020) (quoting United States v. Wright, 812 F.3d 27, 30 (1st Cir. 2016)).

Generally, our review of sentencing errors involves a well-established two-step framework. See United States v. Colón-Cordero, 91 F.4th 41, 48 (1st Cir. 2024). "[W]e first determine whether the sentence imposed is procedurally reasonable and then," if needed, evaluate "whether it is substantively reasonable." Id. (quoting United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011)).

## III. DISCUSSION

Fernández lodges several challenges to his revocation sentence.  We begin and end our analysis with his contention that a procedural error occurred because the district court relied on extra-record evidence to find that he knowingly possessed a machine gun, and that finding then drove his sentence.

According to Fernández, the limited evidence that the government introduced during the revocation proceeding did not support a finding that he knowingly possessed a machine gun.  In response, the government defends the district court's finding that the visible switch was enough to put Fernández on notice that the rifle was a machine gun, and it does so by citing to extra-record evidence.  But as Fernández points out, the district court could not rely on extra-record evidence in imposing his revocation sentence without violating his due process rights and the requirements of Federal Rule of Criminal Procedure 32.1(b)(2).  We agree with Fernández.

If an individual commits a new crime while on supervised release, a district court may revoke the supervised release term and impose a new sentence.  See Colón-Maldonado, 953 F.3d at 3. "To guide the sentencing decision, the United States Sentencing Guidelines set three grades of supervised release violations . . . ."  Id.  The highest, Grade A, applies to conduct including the "possession of a firearm or destructive device of a

type described in 26 U.S.C. § 5845(a)," such as a machine gun. U.S.S.G. § 7B1.1(a)(1)(A)(iii).  As with all supervised release violations, "the government must prove [a Grade A violation] by a preponderance of the evidence."  Colón-Maldonado, 953 F.3d at 3.

Although revocations of "'supervised release are not considered part of a criminal prosecution, they nevertheless entail a loss of freedom and a deprivation of liberty,'" and thus raise "the same due process and fairness considerations."  United States v. Ramos-Carreras, 59 F.4th 1, 6 (1st Cir. 2023) (quoting United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003)). As a result, individuals like Fernández who face supervised release revocation proceedings are "entitled to a panoply of procedural rights."  Correa-Torres, 326 F.3d at 22.  Those rights include "the right to be sentenced on the basis of accurate and reliable information" and "the opportunity to rebut the . . . evidence and the information."  Ramos-Carreras, 59 F.4th at 5 (quoting United States v. Rivera-Rodríguez, 489 F.3d 48, 53 (1st Cir. 2007)); see also Fed. R. Crim. P. 32.1(b)(2) (outlining procedural requirements for final revocation hearing).[2]

---

[2] We recently held that "Rule 32.1(b)(2)(C)'s limited confrontation right applies to the entirety of the revocation proceeding, both in the determination of whether the releasee has violated the conditions of supervised release and in the determination of whether to revoke supervised release and impose a term of imprisonment."  United States v. García-Oquendo, 144 F.4th 66, 76 (1st Cir. 2025).

- 10 -

To be sure, "[a] district court has broad discretion at sentencing to consider information pertaining to the defendant and the defendant's offense conduct." Ramos-Carreras, 59 F.4th at 5 (quoting United States v. Millán-Isaac, 749 F.3d 57, 69 (1st Cir. 2014)). But, as we just discussed, this discretion is "bounded by both Federal Rule of Criminal Procedure 32 and the demands of due process." United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017). For that reason, we have held that a "district court's [material] use of new information" from outside the sentencing record "in determining a sentence[] can be reversible error." Ramos-Carreras, 59 F.4th at 5 (citing Rivera-Rodríguez, 489 F.3d at 54).

To cut to the chase, the government had the burden to establish that Fernández knowingly possessed a machine gun (as we will explain later). But for reasons that remain unclear, the government chose not to include in the revocation record most of the expert testimony about the rifle's characteristics that it introduced during the trial on the new charges, which were ultimately dismissed.

Tellingly, the portions of the trial transcript that the government cites on appeal to bolster the district court's finding were not attached to its Informative Motion. As Fernández describes, he crafted his litigation strategy during the revocation proceeding based on the evidence the government

submitted, given that the burden of proof always remained on the government. Had he known that the government, or the district court, would rely on other evidence, he could have crafted a different strategy. Defense attorneys, he intimates, have no reason to rebut evidence that the government never bothered to introduce.

In response, the government makes two arguments. First, it contends that it did not need to establish that Fernández knowingly possessed a machine gun. Instead, it only needed to show that he possessed a machine gun because, in its view, the Sentencing Guidelines do not impose a mens rea requirement. Second, it claims that, even if it did need to show mens rea, the district court could rely on all the trial testimony (which was not new to Fernández) either via judicial notice or because that evidence was incorporated into the revocation proceeding. On the record here, we cannot agree with the government on either point.

The government has waived its first argument. In its appeal brief, the government contends that the text of the Sentencing Guidelines does not contain a mens rea requirement for Grade A violations. See U.S.S.G. § 7B1.1(a)(1) (defining Grade A supervised release violations as "conduct constituting" certain offenses punishable by imprisonment exceeding one year, including an offense that "involves possession" of a machine gun). But the government never raised this argument to the district court.

Instead, it litigated this case on the premise that it was obligated to prove that Fernández knowingly possessed a machine gun. And, because the government did not raise this argument, the district court did not decide whether the Sentencing Guidelines impose such a requirement, and Fernández was only able to respond to this argument in his appellate reply brief.

As our precedent makes clear, we rarely consider arguments not raised before the district court. See Shabshelowitz v. State of R.I. Dep't. of Pub. Safety, 155 F.4th 62, 66 (1st Cir. 2025) ("If any principle is settled in this circuit, it is that . . . legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." (citation omitted)). Of course, we can affirm on alternative grounds, as the government correctly points out. But we generally do so only when we can rely on well-established legal principles or when those alternative grounds are readily "manifest in the record." Brox v. Woods Hole, 83 F.4th 87, 98 (1st Cir. 2023). Here, however, the government is asking us to affirm by resolving a complex legal question about the correct interpretation of the Sentencing Guidelines that we have not addressed before, even though that issue was not litigated by the parties below and the district court did not have the opportunity to rule on it.

"Appellate courts are, by definition, courts of review," not of "first instance," and it would be imprudent to resolve legal

- 13 -

issues without full adversarial briefing or the benefit of a district court ruling. O'Brien v. United States, 56 F.4th 139, 151 (1st Cir. 2022); see United States v. Lorenzo-Hernandez, 279 F.3d 19, 22 (1st Cir. 2002) (declining to consider the government's new legal argument on appeal when "the government did not present this argument to the district court"); see also United States v. Carrasco-De-Jesus, 589 F.3d 22, 26 & 26 n.1 (1st Cir. 2009) (applying the waiver doctrine against the government because "what is sauce for a defendant's goose is most often sauce for the government's gander"). Thus, we decline to overlook the government's waiver here.

Turning to the government's second argument, we cannot agree that, despite the limited evidence the government submitted to support the revocation allegations, the district court could rely on all the trial testimony related to the dismissed charges without any notice to Fernández. Importantly, the government does not dispute that the court based its mens rea finding on the "obvious" "switch" on the firearm, combined with Fernández's previous conviction for possession of a pistol. According to the government, that finding was supported by "the trial testimony of Agent Pérez, who explained the characteristics of the gun and the switch."

But the testimony the government highlights on appeal to support the district court's finding is nowhere in the revocation

- 14 -

record. The government emphasizes that the district court's language at the revocation hearing "closely track[ed] Agent Pérez's trial testimony," including that "the rifle had a lever" to change the firing mode to automatic. As support, it cites six pages of Agent Pérez's trial testimony (pages 43-45 and 50-52). Yet the government put only one page of Agent Pérez's trial testimony into the revocation record (page 43). And as our quotation of that one page of testimony demonstrates, it included no mention of a switch or lever or its significance (as opposed to the other features of the firearm) in determining the functioning of the rifle. See supra at 6. Indeed, the government concedes that the revocation record lacks any testimony about the rifle's switch or lever. And, in any event, the entirety of Agent Pérez's testimony, including his cross examination, is more nuanced than the six pages of direct-examination testimony that the government cites in its brief.

The government attempts to overcome its failure to put evidence into the revocation record, suggesting to us during oral argument that the district court could have taken judicial notice of all the trial testimony on the dismissed charges or that this testimony was incorporated into the revocation record. Cf. United States v. Rivera-Ruperto, 852 F.3d 1, 15 n.16 (1st Cir. 2017) (noting that "absent exceptional circumstances, we generally consider as waived issues raised only at oral argument"). But the

- 15 -

government never asked the district court to take judicial notice of this testimony or incorporate it into the record. Instead, the government did the opposite; it reiterated that to prove the alleged violations it was resting entirely on the exhibits it attached to its Informative Motion.

Had the government tried to introduce during the revocation proceeding the evidence it now cites on appeal, Fernández would have had the opportunity to object, to introduce contrary evidence or, at a minimum, to develop an argument challenging the force of the government's evidence. Against that full adversarial record, we then could have reviewed any factual findings by the district court for clear error. Instead, Fernández built his revocation defense around the evidence that the government submitted in its Informative Motion. He made the understandable strategic decision not to dispute evidence that was not in that record.

Ultimately, it was the government's litigation strategy during the revocation proceeding that led the district court to rely on extra-record evidence. We cannot, as the government urges us to do, simply ignore its failure to introduce that evidence into the revocation record, which it easily could have done. A district court cannot rely on such extra-record evidence without treading on a defendant's due process rights. See, e.g.,

Millán-Isaac, 749 F.3d at 73 (remanding when the district court relied on extra-record evidence at the sentencing hearing).

Especially when the government seeks to take away an individual's liberty, it "must turn square corners." Ferrara v. United States, 456 F.3d 278, 280 (1st Cir. 2006); see Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 24 (2020) (reviewing agency decision to rescind immigration program and noting that, "when so much is at stake, . . . the Government should turn square corners in dealing with the people" (citation modified)). The government did not do so here.[3]

## IV. CONCLUSION

For all these reasons, we **vacate** Fernández's sentence and **remand** for resentencing consistent with this opinion, limited

---

[3] Because we vacate Fernández's sentence based on this procedural error, we do not reach his other challenges, which include an argument based on the recent ruling in United States v. Esteras, 606 U.S. 185 (2025). See, e.g., Millán-Isaac, 749 F.3d at 73 n.9 (reasoning that decision to vacate and remand for resentencing due to procedural error made it unnecessary to reach the defendant's remaining challenges). We note, however, that on remand the district court will have the benefit of Esteras, which the Supreme Court handed down after the revocation hearing. See 606 U.S. at 188 (discussing the relevant 18 U.S.C. § 3553(a) factors in the supervised release context).

to the current revocation record.[4]  See Ramos-Carreras, 59 F.4th at 8 n.6.

---

[4] Fernández asks us to remand to a different district court judge.  But we remand to a new judge "only in very unusual cases." United States v. Nieves-Díaz, 173 F.4th 8, 16 (1st Cir. 2026) (quoting United States v. Vázquez-Méndez, 915 F.3d 85, 88 (1st Cir. 2019)).  And having reviewed Fernández's request, we see no reason to do so in this case, especially given that it was the government's mistake that set the stage for the error here.  See United States v. Castillo-Torres, 8 F.4th 68, 73 (1st Cir. 2021); cf. United States v. Rosa-Borges, Nos. 24-1841, 24-1842, 2026 WL 1194736, at *6 (1st Cir. May 1, 2026) (remanding to a different judge for resentencing after the district court, unprompted by the government, relied on information outside the record, without citing any source for that information or providing notice to the defendant that it would consider such information).