# United States Court of Appeals
## For the First Circuit

---

No. 02-2027

UNITED STATES OF AMERICA,

Appellee,

v.

JESÚS ALBERTO URIBE-LONDOÑO,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. D. Brock Hornby,[*] U.S. District Judge]

---

Before

Torruella, Lynch and Howard,
Circuit Judges.

---

Malcolm J. Barach, on brief, for appellant.
Germán A. Rieckehoff, Assistant United States Attorney, with
whom H.S. García, United States Attorney, and Sonia I. Torres-
Pabón, Assistant United States Attorney, Chief, Criminal Division,
were on brief, for appellee.

---

May 20, 2005

---

[*] Of the District of Maine, sitting by designation.

**Per Curiam**.  Defendant-appellant Jesús Alberto Uribe-Londoño ("Uribe") entered into a plea agreement on two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251 (a).  He now appeals, arguing that the district court erred in accepting his guilty plea and abused its discretion in imposing a $15,000 fine.  We affirm.

## I.  Background

On March 22, 2000, Uribe, a Colombian national, arrived in Puerto Rico from the United States for a vacation.  He rented a car and an apartment in Isla Verde.  From March 22, 2000 up to March 25, 2000, Uribe induced five different minors between the ages of 12 and 16 to pose in sexually explicit poses and induced three of the minors to exhibit their genitals and engage in sexual conduct involving oral and genital sexual intercourse with him. Uribe videotaped this sexual conduct, and attempted to induce the other two minors to engage in similar conduct.  Uribe was in possession of the videotape and pornographic magazines depicting young people in sexually explicit poses.

On April 19, 2000, Uribe was indicted on five counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) ("Counts One" through "Five") and one count of activities relating to material involving sexual exploitation of children, in violation of 18 U.S.C. § 2252(a)(4)(B)(i)-(ii) (Count Six).  On March 14, 2002, at a sidebar conference during a hearing before the United

States District Court for the District of Puerto Rico,[1] Uribe asked to address the court. After the district court granted his request, Uribe stated that he was "more than willing to reach an agreement in order to dispose of this case," that he had retained several attorneys for this purpose, and that "the first thing that I told them was that I would like to get an agreement with the prosecution here." During the course of his statement, Uribe expressed frustration that it was the eve of trial and that he had not received "an offer from the U.S. Attorney's office," and told the district court that he would like to try to reach a reasonable agreement. Uribe also mentioned concerns regarding the amount of fees he had paid his attorneys.

The district court responded by asking Uribe several questions regarding his relationship with his attorneys and how much he had paid them, and confirmed that Uribe had told his attorneys he wanted a plea agreement. The district court then asked the government and Uribe's attorney what plea negotiations had occurred in the case. After lengthy responses from both sides explaining what negotiations had occurred and why an agreement had not been reached, and further discussion regarding attorney's fees, the district court expressed concern over the amount of fees Uribe had paid, stated that it was going to discuss the matter with the

---

[1] The judge presiding during this hearing was not the trial judge for Uribe's case. The purpose of the hearing was to begin jury selection.

trial judge, and stated that it was "going to start jury selection tomorrow morning . . . . You should be prepared to select this jury. You should be prepared to continue your plea negotiations if you want to, and that's all without prejudice of me doing what I think I have to do under the circumstances." Towards the end of the sidebar, after Uribe had again expressed his desire to reach a plea agreement, the district court told counsel for the government that "I want you . . . to apprise the U.S. attorney what happened here today and to convey to him my concern about the plea negotiation. I just want him to look at it again, that's all. . . . I want him to look at it again from the standpoint of a potential disposition."

The next day, on March 15, 2002, Uribe pled guilty to Counts Three and Five of the indictment. After a hearing, the district court accepted Uribe's plea. On July 9, 2002, the district court sentenced Uribe to 120 months imprisonment for each count, to be served concurrently; a supervised release term of three years for each count, to be served concurrently; and a fine of $15,000. Uribe argues that the district court improperly participated in the negotiation and acceptance of his plea bargain, that he received ineffective assistance of counsel, and that he was never informed of the consequences his guilty plea would have on his immigration status. Uribe also argues that the district court

abused its discretion by not waiving the $15,000 fine.[2]  We discuss each argument in turn.

## II.  Discussion

Uribe begins by arguing that the record establishes that the district court improperly involved itself in the plea negotiations.  See Fed. R. Crim. P. 11(c)(1).[3]  As Uribe made no objection below, our review is for plain error.  See United States v. Pagán-Ortega, 372 F.3d 22, 27 (1st Cir. 2004).  "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Negrón-Narváez, -- F.3d --, 2005 WL 779851, at *4 (1st Cir. Apr. 7, 2005).  The defendant has the burden of establishing plain error, and we have characterized this burden as "considerable."  Pagán-Ortega, 372 F.3d at 27.

---

[2]  In response to many of Uribe's arguments, the government argues that he has raised them in a perfunctory manner and therefore waived them.  See, e.g., United States v. Fox, 393 F.3d 52, 61 n.10 (1st Cir. 2004)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")(internal quotation marks and citation omitted).  We bypass the waiver issues as Uribe's claims are obviously meritless.

[3]  The relevant portion of Rule 11(c)(1) reads:

> **(1) In General**. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement.  The court must not participate in these discussions.

After carefully reviewing the record before us, we conclude that Uribe has failed to prove plain error. While it is true that, at the sidebar conference on March 14, 2002, the district court asked the attorneys what plea negotiations had occurred, and also told the attorney for the government to "apprise the U.S. attorney what happened here today and to convey to him my concern about the plea negotiation," the court did so only in response to Uribe's own complaints and stated desire to reach a plea agreement. Further, the district court did not in any way participate in any plea discussion, but simply inquired about the status of any plea negotiations. Finally, and perhaps most importantly, the district court made clear to counsel that the trial process would continue and that whether any plea negotiations occurred was up to the parties' discretion: "I am going to start jury selection tomorrow morning . . . . You should be prepared to continue your plea negotiations if you want to, and that's all without prejudice of me doing what I think I have to do under the circumstances." (emphasis added). In view of this, we find no error, much less plain error, in the district court's inquiry about the plea negotiations. Cf. Pagán-Ortega, 372 F.3d at 27-28 (finding no plain error where the district court had much heavier involvement in plea negotiations).

Uribe's second argument is that his plea was defective because of ineffective assistance of counsel. This claim was not

made before the district court, and the record is not developed regarding the elements of the claim. Cf. Strickland v. Washington, 466 U.S. 668, 687-96 (1984)(setting forth and explaining the standard for ineffective assistance of counsel claims). "For over twenty years, this court has held with monotonous regularity that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." Negrón-Narváez, 2005 WL at *7 (internal quotation marks and citation omitted). While we have occasionally considered ineffective assistance claims for the first time on direct review, we have done so where "the critical facts are not in dispute and the record is sufficiently developed to allow reasoned consideration of the claim." Id. (internal quotation marks and citation omitted). That is not the case here, and we therefore "follow our usual practice and treat the ineffective assistance of counsel claim as prematurely raised." Id. (internal quotation marks and citation omitted). If Uribe chooses, this claim may be reasserted in an application for post-conviction relief brought pursuant to 28 U.S.C. § 2255.

Uribe next argues that the district court failed to inform him of the consequences his plea would have on his

immigration status.[4]  However, Uribe has not shown how the district court failed to inform him of the consequences of his plea.  We begin by noting that page two, paragraph two, of the plea agreement signed by Uribe states that "[t]he defendant is a Colombian national, and knows that upon conviction he will become an aggravated felon upon conviction [sic] and deportable for life from the United States."  During the Rule 11 colloquy, the district court asked Uribe if his attorneys had explained the elements and nature of the offenses charged and the possible penalties.  Uribe replied that they had.  Later, the district court asked Uribe if he saw the sentence on page two, paragraph two, of his plea agreement.  Uribe replied that he did.  Uribe has not explained how this exchange was insufficient to inform him of the consequences his of plea.  We need go no further, as we see no error in the Rule 11 colloquy, plain or otherwise.

Uribe's final argument is that the district court erred in imposing the $15,000 fine.  We review for abuse of discretion. United States v. Torres-Otero, 232 F.3d 24, 32 (1st Cir. 2000).[5]

---

[4]  An alien convicted of a crime involving moral turpitude is inadmissible to the United States.  See 8 U.S.C. § 1182.

[5]  In his reply brief, Uribe argued for the first time that the district court's imposition of the fine violated Blakely v. Washington, 124 S. Ct. 2531 (2004).  Even assuming dubitante that Blakely were to apply to a fine imposed under the guidelines, the issue was not raised below and Uribe has not argued that there is a reasonable probability of a lower fine were the case to be remanded.  He has failed to meet the standard set forth in United States v. Antonakopoulos, 399 F.3d 68, 81-83 (1st Cir. 2005).

Under U.S.S.G. § 5E1.2(a), "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." "[T]he defendant bears the burden of demonstrating that his . . . case warrants an exception to the rule that a fine be imposed." Torres-Otero, 232 F.3d at 32.

Uribe argues that he cannot pay the fine because he has exhausted all of his resources. However, Uribe has offered no affirmative evidence to support this assertion. Moreover, the Presentence Report ("PSR"), which based its calculations on Uribe's own financial statement, indicates that Uribe's net worth is $135,509, including around $30,000 located in savings and checking accounts. "[W]here a defendant fails to rebut factual assertions in a PSR, the district court is justified in relying on those assertions." Id. Given the PSR calculations and Uribe's failure to provide any evidence of an inability to pay, we conclude that the district court did not abuse its discretion in imposing a fine of $15,000.

### III. Conclusion

For the reasons stated above, the district court's judgment is affirmed.

**Affirmed**.