# United States Court of Appeals
## For the First Circuit

Nos. 16-1434, 16-1561

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL DAVID SCOTT,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Lisa Aidlin for appellant.
David B. Goodhand, Attorney, U.S. Department of Justice, Criminal Division, Appellate Section, with whom William D. Weinreb, Acting U.S. Attorney, Victor A. Wild, Assistant U.S. Attorney, Ryan M. DiSantis, Assistant U.S. Attorney, Kenneth A. Blanco, Acting Assistant Attorney General, U.S. Department of Justice, and Trevor N. McFadden, Acting Principal Deputy Assistant Attorney General, U.S. Department of Justice, were on brief, for appellee.

December 8, 2017

**KAYATTA**, **Circuit Judge**. Michael David Scott claims, among other things, that the district court acted improperly in rejecting a plea agreement he had negotiated with the government, in not allowing him to negotiate and submit a new agreement, and in sentencing him before he read the presentence report ("PSR"). Finding no combination of error and prejudice sufficient to set aside Scott's sentence, we affirm.

## I.  Background

In August 2010, the government charged Scott with wire and bank fraud in violation of 18 U.S.C §§ 1343–44 and unlawful monetary transactions in violation of 18 U.S.C. § 1957, all as described in our opinion issued today affirming Scott's conviction on those charges. See United States v. Scott, No. 15-2405. While those charges were pending, the government secured Scott's indictment on additional wire fraud charges arising out of acts committed after his first indictment. Scott was arrested and detained pending trial.

In May 2015, Scott pled guilty in the first case, without a plea agreement. In November 2015, the district court sentenced him to 135 months' imprisonment in that case. Two months later, Scott and the government entered into a plea agreement in this second case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). If accepted by the court, the agreement would have bound the court to sentence Scott to six months'

imprisonment on the new wire fraud charges, to be served concurrently with the term of imprisonment from the prior case, plus six additional months to be served consecutively to Scott's other sentences in accord with 18 U.S.C. § 3147, which mandates that an individual convicted of a crime committed while on release pending trial serve an additional sentence. The agreement also called for $49,000 in restitution, an amount that did not include attorneys' fees and interest for the victims, and likewise did not include losses related to certain uncharged conduct. The district court conducted a change-of-plea hearing and conditionally accepted the plea agreement, but noted that it would reserve final acceptance or rejection until it had considered the PSR. Sentencing was set for March 25, 2016.

On March 23, a group of victims filed a sentencing memorandum, urging the district court to reject the proposed plea agreement and impose, at a minimum, a consecutive prison term of at least twelve months and a restitution award that included attorneys' fees and interest. The next day, the district court docketed a notice stating: "Having considered the presentence report and the Victim's sentencing memorandum . . . the Court hereby notifies the parties . . . of its intention to reject the . . . plea . . . . The Court concludes that any consecutive sentence of incarceration of less than 12 months . . . is insufficient." The next day, counsel for Scott told the district

court at the sentencing hearing that he had conferred with the government and prepared "a revised agreement to submit to you with what we interpreted as the considerations within your order." Neither counsel disclosed the terms of the proposed submission, and the district court rejected the effort, saying:

> [A]s I understand [Rule 11], . . . the defendant has a choice when the judicial officer rejects a (C) plea: He can withdraw his plea and go to trial. . . . Or he can choose not to withdraw his plea and go forward with the sentencing as of that moment. There is no new plea to be negotiated.

The record reflects that Scott and his attorney then had a private conversation, following which Scott's attorney, in Scott's presence, told the court that Scott intended to maintain his guilty plea and move forward with sentencing. The district court then proceeded with the sentencing, ultimately imposing a sentence of forty-one months' imprisonment, with twenty-nine months attributed to the wire fraud charge to be served concurrently with Scott's 135-month sentence and twelve months attributed to section 3147 to be served consecutively to both of Scott's other sentences. In short, as a practical matter, this sentence meant that Scott would likely serve six additional months of prison time beyond the amount to which he and the government had conditionally agreed. The court also ordered Scott to pay a total of $265,535 in restitution to various victims identified by their initials in the PSR.

At the conclusion of the sentencing hearing, the following exchange occurred:

> MR. GLEASON [counsel for Scott]: Judge, [Scott] wants to wish to express to the Court that he did not see the Presentence Report and that he was not aware of initials and people being owed money on initials as being an issue for purposes of the restitution.
> DEFENDANT: Yes.
> THE COURT: Does Probation wish to respond to that?
> MS. ROFFO [representative from the probation office]: Your Honor, the Presentence Report was disclosed to counsel, and counsel is to share it with his client.
> THE COURT: Mr. Gleason, you got the Presentence Report, correct?
> MR. GLEASON: Yes, we did, your Honor.
> THE COURT: All right. Anything further, Mr. Wild?
> MR. WILD [Assistant U.S. Attorney]: Only on the question that's usually asked, your Honor, by the Court, is whether counsel and the defendant have discussed it, and I'm assuming they have.
> THE COURT: You discussed the Presentence Report with your client?
> MR. GLEASON: I have, your Honor, I discussed it. I discussed it with the original and that it was the additional facts which were presented relative to this charge.
> THE COURT: Thank you. We're adjourned.

## II. Discussion

Scott contends that the district court committed six specific errors: it improperly rejected his plea agreement based on an erroneous understanding of the relevant law; it impermissibly prevented him from securing and submitting a new plea agreement after his first was rejected; it impermissibly participated in

plea discussions; it wrongly denied him a continuance; it imposed a sentence even though he had not read the PSR; and it failed to provide adequate notice of certain information upon which it relied.  Additionally, Scott argues that the cumulative effect of these errors was sufficient to deny him a full and fair sentencing hearing, in violation of his due process rights.  We address each argument separately.

**A.**

We consider first Scott's contention that the district court's rejection of the plea agreement was substantively improper because, in his view, the district court relied on an incorrect interpretation of relevant law.  Specifically, he submits that the victims' sentencing memorandum erroneously claimed that the portion of the sentence to run as a consecutive add-on under 18 U.S.C. § 3147 had to last a minimum of twelve months, and that the district court relied on this incorrect interpretation of section 3147 in rejecting the plea agreement.[1]

---

[1] In the section of his opening brief dealing with this issue, Scott also makes a three-sentence argument that the district court and U.S. Probation Office erred in adopting the amount of restitution from the victims themselves without a sufficient evidentiary basis.  The perfunctory nature of this argument waives it.  See Puerto Rico Tel. Co., Inc. v. San Juan Cable LLC, 874 F.3d 767, 770 (1st Cir. 2017).  And in any event, this argument would likely fail, as Scott makes no claim even now that the amounts in question were inaccurate.

Scott did not present this argument to the district court, so we review his claim for plain error.  See United States v. Uribe-Londoño, 409 F.3d 1, 3 (1st Cir. 2005).  In order to succeed on plain error review, Scott must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id. at 4 (quoting United States v. Negrón-Narváez, 403 F.3d 33, 37 (1st Cir. 2005)).

Mere speculation that a court may have erroneously viewed its hands as tied by section 3147 serves poorly as a claim that error even occurred, much less that such error is plain.  The district court said nothing to suggest that it felt bound by law to extend the agreed-upon six-month consecutive sentence to twelve months.  As we have noted, we "presume that federal judges know the law."  United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014).  The fact that section 3147, correctly applied, allows the sentence imposed buttresses this conclusion.  We take the district court at its word that in rejecting the plea agreement, it had simply concluded, well within its discretion, that only a twelve-month consecutive sentence would be sufficient.  In this, there was no error, plain or otherwise.

**B.**

We turn next to Scott's argument that the district court erred by not withholding sentencing until he had a chance to finalize a new plea agreement. Following the rejection of the plea agreement, Scott's counsel represented to the court that he and the government had reached a revised agreement. The district court, however, stated that it could not accept such an agreement, because in its view, once a district court rejects a plea agreement, the defendant has only two choices: maintain a guilty plea unconditionally and proceed to sentencing, or withdraw the plea and proceed to trial. The district court stated on the record that under its view of Federal Rule of Criminal Procedure 11(c), "[t]here is no new plea to be negotiated." Scott argues on appeal that the district court was incorrect and that he should have been permitted to negotiate a new plea agreement.

The question of whether the government and a defendant may negotiate and submit a new plea agreement after one is rejected by the court appears to be a matter of first impression in this circuit. Rule 11(c)(5) specifies that in rejecting a plea agreement made pursuant to Rule 11(c)(1)(A) or (C), a district court must inform the parties of the rejection, advise the defendant that the court is not required to follow the agreement, give the defendant an opportunity to withdraw the plea, and advise the defendant that "if the plea is not withdrawn, the court may

dispose of the case less favorably toward the defendant than the plea agreement contemplated." Nothing in Rule 11 requires (or even suggests) that a defendant only gets one bite at the negotiation apple. And as Scott points out, other circuits have implied that renegotiation is permissible in the face of a rejected plea. See United States v. Kraus, 137 F.3d 447, 449 (7th Cir. 1998); United States v. Mukai, 26 F.3d 953, 956-57 (9th Cir. 1994); United States v. Olesen, 920 F.2d 538, 543 (8th Cir. 1990).

We are at a loss to see any good reason why a defendant could not negotiate a new plea agreement with the government and submit it to the district court in the wake of that court's rejection of a Rule 11(c)(1)(C) agreement. Even on appeal, the government makes no claim that such an option is foreclosed. It may be true, as the government argues, that to renegotiate and submit a new plea agreement, a defendant must necessarily withdraw his or her existing plea, which Scott did not choose to do. But Scott and his attorney could have easily interpreted the district court as stating that it would consider no additional submissions even if he withdrew his plea.

Whether the district court therefore erred in its comments, we need not finally decide. Assuming such an error occurred, it was harmless. As noted above, the district court determined that only a twelve-month consecutive sentence would be sufficient. This was, as the district court stated, the bare

minimum it would accept.  And as it turned out, it was exactly the sentence that the district court imposed.

Scott argues that, had he been permitted to negotiate and submit a new agreement, he might have done better.  But even though his counsel apparently discussed with the government a new agreement to be offered to the court, he can give us no reason to think that the government would have agreed to recommend a consecutive sentence below twelve months after the district court rejected six months.  Nor does he give us any reason to believe that the district court would have accepted such a recommendation given that it had already rejected the government's agreement to a six-month sentence.  Thus, any error committed here placed Scott in no worse a position than he would have been in had he been given the opportunity to negotiate a new plea.  In short, by any measure, the assumed error on this point was harmless.

### C.

Scott next claims that the district court improperly inserted itself into plea negotiations when it notified the parties that it believed anything less than a twelve-month sentence to be insufficient.  Scott did not raise this issue in the district court, so we once again review for plain error.

A district court necessarily walks a fine line in rejecting a plea agreement.  On the one hand, it may perceive a

need to explain why it is rejecting the agreement.[2]  On the other hand, it may need to avoid suggesting the particular terms upon which the parties need agree to secure approval.  See Kraus, 137 F.3d at 453-55; see also United States v. Miles, 10 F.3d 1135, 1139-40 (5th Cir. 1993).  To safely walk this line in this case, the district court might have simply explained that it rejected the agreement because the six-month duration of the consecutive portion of the sentence was too lenient, and because the restitution award did not cover attorneys' fees and interest. Arguably, the district court crossed the line here when it further explained that nothing less than twelve months' imprisonment, served consecutively to Scott's other sentences, would be sufficient.

As we have observed, though, Scott did not argue to the district court that it had crossed such a line, nor did he lodge

---

[2] We have not decided whether such an explanation is required, while those circuits that have done so have given conflicting directions.  Compare Kraus, 137 F.3d at 453 (holding that a district court must offer its reasons for rejecting a plea agreement and collecting cases) and United States v. Moore, 916 F.2d 1131, 1136 (6th Cir. 1990) (same) with United States v. Lee, 265 F. App'x 763, 766 (11th Cir. 2008) (stating that a district court need not offer reasons for its rejection of a plea) (citing United States v. Bean, 564 F.2d 700, 702 n.3 (5th Cir. 1977)) and United States v. Moore, 637 F.2d 1194, 1196 (8th Cir. 1981) (same). See also United States v. Foy, 28 F.3d 464, 472 (5th Cir. 1994) (holding that the district court need not state on the record its reasons for rejecting a plea agreement provided that "the record as a whole renders the basis of the decision reasonably apparent to the reviewing court").

any objection on that basis. So on plain error review, he must show, among other things, that there was clear and obvious error, and that it affected his substantial rights. He falls short on both counts. The circuits have not clearly spoken as to how much information a district court must offer a defendant when rejecting a guilty plea (and how much information is too much), and the issue is undecided in this circuit. This strongly suggests that, the error, if any, was not clear and obvious. Nor did any error affect Scott's substantial rights. While Scott could conceivably find prejudice if he had a credible argument that, absent the court's comments, he would have gone to trial and thus had the possibility of an acquittal, see United States v. Bierd, 217 F.3d 15, 19 (1st Cir. 2000), he does not now seek to avoid his plea and go to trial; he merely requests resentencing.

Contrary to Scott's contention, the district court's comments do not create the appearance of impropriety, another concern underlying the prohibition on judicial involvement in plea negotiations. See id. ("[T]he interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any question or suspicion when it becomes his duty to impose sentence.") (quoting United States v. Werker, 535 F.2d 198, 203 (2d Cir. 1976)). The district court's suggestion that nothing less than a twelve-month sentence would be

sufficient did not occur "preliminary to the determination of guilt." Id. Rather, it came after a guilty plea had been tendered. And it was not based on rank speculation, but upon information gleaned from the PSR and victims' sentencing memorandum, exactly the type of information that should inform a district court's sentencing decisions.

Moreover, the six-month difference between the parties agreed-upon six-month consecutive sentence and the twelve months ultimately imposed is, in the context of the ten-year maximum sentence permissible under section 3147, so fine as to render it inconceivable that the judge's mention of the twelve-month figure reduced Scott's ability to secure a non-binding plea that would have caused the district court to impose a shorter sentence. To conclude otherwise would require us to hypothesize that had the district court not made the statement it did, but merely rejected the sentence as too lenient, it would have accepted an agreement providing for some consecutive sentence between six and twelve months. Such hypothesizing carries too little weight for plain error review, which by its nature places a "heavy burden" on the party seeking reversal. See United States v. Latorre-Cacho, 874 F.3d 299, 303 (1st Cir. 2017) (quoting United States v. Prieto, 812 F.3d 6, 17 (1st Cir. 2016)).

Scott's attorney brought to the district court's attention Scott's claim that he had not seen the PSR and was not aware of the restitution information it contained. The government also conceded at oral argument on appeal that the issue was preserved. We review preserved claims of Rule 32 violations de novo, and will remand if there is error that is not harmless. See United States v. González-Vélez, 587 F.3d 494, 508–09 (1st Cir. 2009).

Federal Rules of Criminal Procedure 32(c) and (d) require that the U.S. Probation Office conduct an investigation and prepare a PSR. The PSR is to contain a variety of information concerning the application of the sentencing guidelines given the offense and the offender, including "information sufficient for a restitution order" if the applicable "law provides for restitution." Fed. R. Crim. P. 32(d)(2)(D). Rule 32(i)(1)(A) requires the district court to verify at the sentencing hearing "that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report."

We have said in the past that the "better practice" in complying with Rule 32 is for district courts "to address the defendant directly in order to establish that he or she has had the opportunity to read the PSR and to discuss it with his/her counsel." United States v. DeLeon, 704 F.3d 189, 196 (1st Cir.

2013) (brackets omitted) (quoting United States v. Manrique, 959 F.2d 1155, 1157-58 (1st Cir. 1992)).  The district court did not do so here.  As a result, we cannot say that it is clear that Scott was familiar with the substance of the final PSR.  Cf. id. ("[I]f it is abundantly clear from the sentencing hearing that both defendant and his counsel are familiar with the report, a new sentencing hearing will not be mandated, even if the court failed to directly inquire whether the defendant had an opportunity to review the report.") (quoting Manrique, 959 F.2d at 1157).

That being said, the record is clear that any error was harmless.  The only potential prejudice Scott identifies relates to the restitution award.  Scott argues that the PSR contained three uncharged relevant matters that added an additional $142,500 to the restitution amount, and that because he had not reviewed the PSR, he had no opportunity to challenge this portion of the sentence.  The problem for Scott is that, even now, he has not identified any deficiency in these readily verifiable calculations.  Furthermore, he has made no legal argument that this uncharged conduct could not serve as the basis for a restitution award.  Put simply, Scott has made no argument to this court that the result would have been any different had he read the PSR in full.  So, if there was error in how the district court treated Scott's statement regarding the PSR, it was harmless.

**E.**

The day before the sentencing hearing, Scott moved for a continuance on the ground that his counsel had a conflict due to a trial in another court. The district court denied the request. As it turned out, Scott's counsel appeared at the hearing, seemed prepared, and made no claim otherwise. We reverse a district court's denial of a motion to continue only for "'manifest abuse of discretion' where the district court 'indulged a serious error of law or suffered a meaningful lapse of judgment, resulting in substantial prejudice to the movant.'" West v. United States, 631 F.3d 563, 568 (1st Cir. 2011) (emphasis added) (quoting United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995)). Given the very strong presumption against reversal on this basis, we will not reverse here, where there was no manifest error of law and no obvious prejudice in denying the continuance.

In an attempt to argue otherwise, Scott notes that shortly after denying the request to continue based on counsel's scheduling conflict, the district court also announced that it would reject the plea agreement. Scott's argument seems to be that his counsel needed more time to consider and take steps in response to that news. Scott, though, never moved for a continuance for that reason. Nor did his counsel claim that more time was needed. To the contrary, he said he would "like to go

forward."  No rule or precedent requires a court in such a situation to continue a hearing sua sponte.

**F.**

Scott also argues that he had insufficient notice of the victims' sentencing memorandum, and of the fact that the district court would rely upon it in sentencing him.[3]  Though "[a] district court has broad discretion in the information it may receive and consider" in determining a sentence, "a defendant has a due process right to be sentenced upon information which is not false or materially incorrect."  United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991).  To protect this right, "a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based."  United States v. Rivera-Rodríguez, 489 F.3d 48, 53–54 (1st Cir. 2007) (quoting United States v. Berzon, 941 F.2d 8, 10 (1st Cir. 1991)).  If a court considers information outside the PSR, such as the victims'

---

[3] At various points throughout his brief, Scott suggests that the district court also erred in failing to provide him notice that it would rely upon the victims' sentencing memorandum in rejecting the plea agreement.  He does not develop this argument, however, and thus waives it.  See United States v. Corbett, 870 F.3d 21, 33–34 (1st Cir. 2017) (deeming an argument waived where a party failed "to meaningfully develop [it] or support it with any authority").  In any event, the argument would likely fail; Scott cites no authority, and we are aware of none, supporting the proposition that Rule 11 or due process more generally require that a district court notify a defendant, prior to the rejection of a plea agreement, that it may consider certain information in reaching that decision.

sentencing memorandum at issue here, it "should disclose to the defendant as much as was relied upon, in a timely manner, so as to afford the defendant a fair opportunity to examine and challenge it." Curran, 926 F.2d at 63.

The victims' sentencing memorandum was filed two days before the hearing, with the court's notice that it was planning to reject the plea agreement appearing on the docket just the day before. Certainly that may have allowed too little time within which to "examine and challenge" any asserted facts. Scott, though, made no request for any such additional time on that basis, nor claimed that he saw any such need. Nor was this surprising; the memorandum contained no facts that Scott disputes even now. Rather, the only facts tendered consisted of a general description of Scott's criminal activity as it related to the victims, of their losses, including attorneys' fees, and of details relating to settlement discussions.

In any event, Scott's acquiescence below leaves him to argue, again, that it was plain error for the district court not to have sua sponte continued the sentencing because the victims filed their memorandum. And again, Scott cites no authority that mandates such a sua sponte continuance. With no authority suggesting such a continuance was required, there was no "clear or obvious" error, and thus Scott cannot succeed on plain error review.

Scott's final claim is that the preceding errors or assumed errors, even if insignificant individually, nonetheless had a strong enough cumulative effect as to render his sentencing hearing violative of due process.  We disagree.

It is true that "[i]ndividual errors, insufficient in themselves to necessitate [reversal], may in the aggregate have a more debilitating effect."  United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993).  As the preceding discussion makes clear, however, many of the errors asserted by Scott were not, in fact, errors.  Furthermore, the harmlessness of any potential errors all stemmed from the same fact; namely, that the record is clear that the district court imposed the lowest sentence it believed sufficient for the offense, and that sentence was well below what the court in its discretion could have imposed.  At bottom, Scott has simply made no showing that the district court committed any errors that either individually or cumulatively could have adversely affected the sentence that he received.

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.