[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10261

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MELVIN MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20826-FAM-1

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judge.

PER CURIAM:

Melvin Martinez pleaded guilty to and was convicted of car-jacking and aiding and abetting carjacking. On appeal, Martinez, for the first time, challenges the knowing and voluntary nature of his guilty plea, as well as the district court's failure to continue his sentencing hearing *sua sponte* to give him time to consult new counsel. He also asserts that his 120-month sentence is substantively unreasonable. We reject each of these arguments and affirm.

I

As detailed in his factual proffer, Martinez and another individual (K.C.) approached a Mercedes-Benz G550 at a gas station one night in October 2019. They "each pointed firearms at the driver," and "demanded that [she] exit the [v]ehicle, which [she] did in fear [for] her life." Martinez then snatched a rather expensive chain from the woman's neck, and his accomplice entered the Mercedes and drove away in the vehicle. A couple of hours later, police recovered the car unoccupied, and determined that two fingerprints on the Mercedes matched those of Martinez. The woman later identified Martinez "as one of the men who pointed a firearm at her at the gas station and took her necklace." Text messages from Martinez's phone also revealed that he was with K.C. when they "lost" the Mercedes, and Martinez explained "that's why we park em to see if [the] feds [are] already on it."

Martinez pleaded guilty to carjacking and aiding and abetting carjacking. After accounting for an acceptance-of-responsibility adjustment, the district court determined—and the parties did not dispute—that the advisory Guidelines range was 57 to 71 months' imprisonment. Before his sentence was imposed, however, Martinez provided a statement. Despite his earlier representations that he was pleased with counsel, Martinez complained that his counsel "pressured" him into signing a bad plea, and he averred that he "really didn't have nothing to do with this carjacking." Further, he claimed that he hadn't seen his written plea until three months after it was entered. Martinez clarified that he did not want to withdraw his plea, but he hoped that the sentencing judge would "take into consideration" the concerns he had raised.

The sentencing judge found that Martinez's statements were "inconsistent with acceptance of responsibility and a show of remorse." On top of that, the judge was troubled by Martinez's lack of appreciation for the seriousness of his offense, as well as a string of thefts in Martinez's past for which he hadn't "really been penalized." Relying most heavily on the need to protect the public, the sentencing judge decided to depart upward from the Guidelines' recommendation—to a sentence of 120 months. He also ordered Martinez to pay $10,581 in restitution for the items stolen during the carjacking, including the necklace.

Martinez's appeal raises three issues. First, he argues that the district court failed to comply with Rule 11. Second, he insists that the district court should have *sua sponte* continued his

sentencing hearing after he complained about his counsel's representation. And third, he contests the substantive reasonableness of his sentence.

## II

We turn first to his Rule 11 arguments. Martinez asserts that the district court's plea colloquy was deficient insofar as the court: (1) did not determine that his plea was free from coercion, (2) failed to apprise Martinez that he was waiving certain rights, (3) neglected to advise him that he could be held liable for restitution, and (4) failed to determine whether Martinez understood the nature of the charge against him. Because he "did not assert these Rule 11 violations in the district court, our review is only for plain error." *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015); *see* Fed. R. Crim. P. 52(b). To show plain error, Martinez has the heavy burden of identifying an (1) error, (2) that was obvious or clear, (3) that affected his substantial rights. *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021). Only "if the above three prongs are satisfied" do we then have "the discretion to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (emphasis omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). Applying this standard, we conclude that none of Martinez's purported errors entitles him to relief.

## A

As to the first, Martinez urges that the district court failed to ensure that his plea was "voluntary and did not result from force, threats, or promises" beyond those contained in his plea agreement. Fed. R. Crim. P. 11(b)(2). Martinez is right that the district court did not ask whether his plea was the product of coercion. But to demonstrate that this error affected his substantial rights, Martinez "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). He has not done so here.

Martinez relies primarily on his contention at the sentencing hearing that he felt "pressured into signing a bad plea" because his attorney advised him that he could face additional charges if he didn't plead guilty. But this overlooks the fact that "[a]ll pleas of guilty are the result of some pressures or influences on the mind of the defendant." *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988) (quotation omitted). "A defendant cannot complain of coercion where his attorney, employing [her] best professional judgment, recommends that the defendant plead guilty." *Id.*; *see United States v. Castro*, 736 F.3d 1308, 1315 (11th Cir. 2013) (per curiam). After all, plea decisions are inherently "suffused with uncertainty." *Premo v. Moore*, 562 U.S. 115, 124 (2011). In this case, Martinez's statement shows only that his counsel provided advice and helped him understand the risks of choosing to plead not guilty. He has thus failed to demonstrate that if the district court

asked him whether his plea was the product of coercion, there is a reasonable probability that he would've changed his plea.

To the contrary, Martinez thrice represented under oath his desire to plead guilty at the initial colloquy. And he did not protest when the district court expressed its finding that Martinez's "guilty plea [was] freely and voluntarily entered." Moreover, even after later alleging that his counsel pressured him to enter the guilty plea at the sentencing hearing, Martinez repeatedly insisted that he did not want to withdraw his plea. *See* Doc. 58 at 33 ("Your Honor, I'm not stating this because I want to withdraw my plea."); *id.* at 34–35 ("[N]ow that it's too late and I'm already here at sentencing, I would like to move forward so I can get back out there to my family."); *id.* at 44 ("I never said that I wanted to move backwards or withdraw my plea, Your Honor."). As Martinez assured the district court, he raised his concerns simply because he believed that it would help him at sentencing. In light of these facts, Martinez "ha[s] not carried the burden of showing that" any error by the district court "affected [his] substantial rights." *Greer*, 141 S. Ct. at 2097.

## B

For similar reasons, Martinez fares no better on his contention that the district court neglected to inform him that he was waiving certain rights by pleading guilty. The district court advised Martinez of all the rights and matters specified in Rule 11, except it did not mention his right to plead not guilty, to continue to be represented by counsel at trial, and to cross-examine adverse witnesses

and compel the attendance of witnesses.  *See* Fed. R. Crim. P. 11(b)(1)(B), (D), (E).  As the government concedes, that was error.

Nevertheless, Martinez "offers no reason why he would not have pled guilty if he had received more thorough instructions under Rule 11."  *United States v. Moriarty*, 429 F.3d 1012, 1020 n.5 (11th Cir. 2005); *see also United States v. Monroe*, 353 F.3d 1346, 1357 (11th Cir. 2003).  As explained above, Martinez repeatedly expressed his desire to persist in a guilty plea—both at the plea colloquy and at the sentencing hearing.  At the same time, we see "nothing in the record [that] indicates that, but for the district judge's error, [Martinez] would not have entered his guilty plea."  *Moriarty*, 429 F.3d at 1020.[1]

---

[1] Martinez identifies one instance where he equivocally said at the sentencing hearing, "If I would have seen [the plea] in person or went over it in person, then I would be able to probably withdraw my plea."  But Martinez admitted that his attorney "went through" the plea agreement over the phone with him.  And the referenced statement was in no way tied to the district court's Rule 11 errors here, which concern the waiver of rights not listed in the plea agreement.  Instead, Martinez expressed his concerns as to (1) the appellate waiver contained in the plea and (2) his involvement in the carjacking.  With respect to the former, the district court went over the appellate waiver at the initial plea hearing, and Martinez affirmed that he still wanted to plead guilty even knowing of his limited ability to appeal.  Further, because the court varied upwards—and thereby rendered the waiver inapplicable—any potential error is harmless.  *See* Fed. R. Crim. P. 11(h).  With respect to Martinez's involvement in the carjacking, the district court relied on Martinez's previous sworn admission that the facts contained in the proffer (and read at his plea hearing) were true.  As we explain below, that was permissible.

To be sure, we have in the past permitted a defendant to withdraw a guilty plea based on a district court's failure to mention some of the rights listed in Rule 11. *See United States v. Hernandez-Fraire*, 208 F.3d 945, 951 (11th Cir. 2000). But "the defendant in *Hernandez-Fraire* expressed confusion during the plea colloquy as to the nature of his rights." *Moriarty*, 429 F.3d at 1020 n.5; *see Hernandez-Faire*, 208 F.3d at 951 ("I really don't know about this plea, *because I don't know what my rights are.*"). "No such confusion appeared in [Martinez]'s plea colloquy." *Moriarty*, 429 F.3d at 1020 n.5. And it bears repeating that the presence of plain error alone is not sufficient to warrant vacatur. Because Martinez has failed to demonstrate a reasonable probability that he wouldn't have pleaded guilty absent the Rule 11 errors, he is not entitled to relief. *See Dominguez Benitez*, 542 U.S. at 83.

## C

Martinez also complains that the district court failed to advise him of its "authority to order restitution." Fed. R. Crim. P. 11(b)(1)(K). The court explained the maximum punishments that it could impose, including "a quarter of a million dollar fine." Then, after Martinez confirmed his understanding, the court asked whether there was any "expected restitution," to which the government responded "[n]ot at this time."

Even assuming it was error for the court not to clarify that restitution could still be ordered at sentencing, Martinez's claim lacks merit. As we've held in the past, even a wholesale failure to warn of the possibility of restitution does not affect "a defendant's

substantial rights where he was warned of a potential fine larger than the actual amount of restitution ordered." *United States v. Morris*, 286 F.3d 1291, 1294 (11th Cir. 2002). As in *Morris*, the restitution order of $10,581 here "was considerably less than the fine [Martinez] was warned of at the time of his guilty plea." *Id.* Hence, he cannot make the third showing necessary for plain-error relief.

## D

Martinez's final alleged Rule 11 error is that the district court didn't adequately explain the "nature of [the] charge" to which he pleaded guilty. Fed. R. Crim. P. 11(b)(1)(G). He maintains that the court never set forth the elements of carjacking or explained the aiding-and-abetting theory of liability. We again find no reversible error.

"There is no rigid formula or mechanical rule for determining whether the district court adequately informed the defendant of the nature of the charges." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018) (quotation marks omitted). Nor does anything in Rule 11's text "specify that a district court must list the elements of an offense." *Id.* "Rather, what constitutes an adequate plea colloquy varies from case to case depending on the complexity of the charges and the defendant's intelligence and sophistication." *Id.*

Here, the district court was not faced with a "complex case[]," such as one involving "esoteric terms or concepts unfamiliar to the lay mind." *Id.* at 1239 (quotation omitted). We think that

carjacking "is ordinarily a relatively simple charge easily under-stood by a person" of Martinez's intelligence. *See United States v. DePace*, 120 F.3d 233, 237 (11th Cir. 1997); *United States v. Diaz*, 248 F.3d 1065, 1096 (11th Cir. 2001) (listing the elements of the of-fense). At the very least, even though it would have been prefera-ble for the district court to list the elements of the offense, it was not plain error for it to instead rely on the factual proffer. *See Pres-endieu*, 880 F.3d at 1240. The district judge first confirmed that Martinez "want[ed] to plead guilty to Count 1 which is carjacking and aiding and abetting carjacking." The judge went on to say that the prosecutor would explain "what [Martinez was] charged with, [and] what [he was] pleading guilty to." And the prosecutor recited the proffer in full. That proffer stated that Martinez and K.C. ap-proached the Mercedes and "each pointed firearms at the driver . . . with the intent to cause death or serious bodily harm and demanded that [she] exit the vehicle." After the driver exited the car "in fear [for] her life," K.C. "entered the driver's seat and drove away in the vehicle." The proffer then went on to explain that the Mercedes "was manufactured outside the state of Florida and pre-viously had been transported, shipped or received in interstate or foreign commerce." Accordingly, the factual proffer explicitly touched on—often verbatim—all the elements necessary to sustain the charge against Martinez. *See Diaz*, 248 F.3d at 1096. And Mar-tinez confirmed that he "agree[d] with everything the prosecutor ha[d] stated about what [he] did in this case." We cannot say that this colloquy resulted in plain error—that is, a "total or abject

failure" to ensure that Martinez "underst[ood] the nature of the charge[] against him." *Presendieu*, 880 F.3d at 1239.

Similarly, "[w]hile a brief explanation of the aiding and abetting theory would have been preferable, we cannot find that its omission undermined [Martinez]'s understanding to a degree that would invalidate the district court's acceptance of the guilty plea." *DePace*, 120 F.3d at 238. As in *DePace*, "[t]he degree of complexity added by the aiding and abetting theory is minimal" under these facts. *Id.* at 237. Martinez admitted at the plea colloquy that he pointed a gun at the victim to help force her out of the car so that his accomplice could drive away in the stolen vehicle. A lay person of Martinez's intelligence "would likely understand his liability for" brandishing a firearm in those circumstances. *Id.* It certainly wasn't plain error to so find—particularly not where Martinez "was represented by counsel and had ample opportunity to express any confusion [he] might have had." *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000). Indeed, Martinez confirmed that he "went over everything" with his lawyer and represented that there wasn't anything that he didn't understand.

Even so, Martinez protests that some of the statements that he made at the sentencing hearing indicate that he didn't understand the concept of aiding and abetting. Yet in that same conversation, Martinez also claimed that there was "no gun involved in my case." He does not dispute that if there were a gun, he didn't understand how brandishing it would amount to aiding and abetting the carjacking. In essence, then, Martinez's argument

amounts to a simple disagreement with the district court's finding that he pointed a gun at the driver to help steal the Mercedes. There is, however, a "strong presumption" that his admissions to those very facts during the plea colloquy were true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). And Martinez fell far short of rebutting that presumption; the district court was entitled to accept Martinez's sworn admissions over his later, self-serving repudiation of his involvement in the carjacking. *See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). That being the case, the district court did not plainly err in its attempt to ensure that Martinez understood the nature of the charges against him.

Accordingly, we see no reversible Rule 11 error.

## III

Next, Martinez insists that, after he lodged complaints about his attorney, the district court should have continued the sentencing hearing to permit him to consult new counsel. Normally, we'd review the denial of a motion to continue sentencing for abuse of discretion. *United States v. Edouard*, 485 F.3d 1324, 1350 (11th Cir. 2007). But, as Martinez acknowledges, he never moved for a continuance. "[B]ecause [he] did not raise this issue below, the plain error standard applies." *United States v. Cingari*, 952 F.3d 1301, 1305 (11th Cir. 2020); *see also, e.g.*, *United States v. Scott*, 877 F.3d 42, 51 (1st Cir. 2017); *United States v. Rivas-Macias*, 537 F.3d 1271, 1281 (10th Cir. 2008); *United States v. Carrera*, 259 F.3d 818, 824

(7th Cir. 2001); *United States v. Kizzee*, 150 F.3d 497, 501 (5th Cir. 1998).[2]

"As we have repeatedly recognized, an error cannot meet the 'plain' requirement of the plain error rule if it is not clear under current law." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (per curiam) (quotation marks omitted). Martinez does not identify any case similar to this one, where we or the Supreme Court have found that a district court abused its discretion in refusing to continue a proceeding so that the defendant could obtain new counsel. Nor could we find any. That is fatal to Martinez's claim. *See United States v. Leon*, 841 F.3d 1187, 1196 (11th Cir. 2016) ("In this circuit, a district court's error is not plain or obvious if there is no precedent directly resolving the issue." (cleaned up)).

---

[2] Seeking to escape plain-error review, Martinez cites to our decision in *United States v. Wingo*, 789 F.3d 1226, 1236 (11th Cir. 2015). But that case applied an abuse-of-discretion standard to "a district court's failure to *sua sponte* order a hearing on the defendant's competency under [18 U.S.C. § 4241]." *Id.* Our application of the abuse-of-discretion standard turned on the unique circumstance of an allegedly incompetent defendant and the language of § 4241, which imposes a specific "duty on the district court to inquire *sua sponte* into a defendant's mental competency." *Id.* at 1236 n.10; *see also id.* at 1235–38. Here, Martinez does not identify any similar reason why his claim isn't subject to the ordinary mandate that "unpreserved errors must be analyzed for plain error under Rule 52(b)." *Greer*, 141 S. Ct. at 2099; *see Puckett*, 556 U.S. at 135–36. Simply put, then, the issue wasn't "properly preserved for appeal in order to warrant abuse-of-discretion review." *United States v. Akwuba*, 7 F.4th 1299, 1316–17 (11th Cir. 2021).

14                    Opinion of the Court                    21-10261

In any event, we see no abuse of discretion. The matters Martinez complained of for the first time at sentencing—irregularities with the plea agreement, counsel's alleged deficiencies, and his insistence that he wasn't directly involved in the carjacking—were all known to him well before sentencing. Thus, Martinez was not "diligen[t] in his efforts" to bring his complaints to the court's attention, and a "continuance would have inconvenienced the court and the opposing party." *DeJesus v. Lewis*, 14 F.4th 1182, 1202 (11th Cir. 2021). In addition, Martinez expressed the opposite sentiments at his plea hearing, confirming under oath that he committed the acts described in the factual proffer and was pleased with his counsel, who concededly "went over everything" together with him. Even at sentencing, when the district judge asked Martinez "what should I do with" the complaints he raised, Martinez never asked for new counsel or sought a continuance. He simply asked the judge to "please sentence me and take into consideration what I stated," which the judge did. Given the foregoing circumstances, we cannot say that the district court erred in proceeding with the sentencing hearing—let alone plainly.[3]

---

[3] Martinez's trial counsel withdrew after the sentencing hearing because of the complaints that Martinez raised with respect to her performance. To the extent Martinez bases his claim on his counsel's alleged deficient performance, we decline to consider such a theory at this juncture. "The preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion." *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). Martinez may pursue that potential avenue for relief in the future if he so chooses.

## IV

Last up is Martinez's challenge to his sentence. We review the substantive reasonableness of a defendant's sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). When, as here, the sentence imposed is above that recommended by the Guidelines, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors" justify the upward departure. *Id.* at 51. "Although there is no proportionality principle in sentencing, a major variance does require a more significant justification than a minor one—the requirement is that the justification be 'sufficiently compelling to support the degree of the variance.'" *United States v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) (quoting *Gall*, 552 U.S. at 50). At the same time, we may not substitute our own judgment for that of the district court. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015). The challenger can prevail only if he shows that the district court's sentence was entirely outside "the ballpark of permissible outcomes." *Id.* (quotation omitted).

That's not the case here. The district court emphasized the "very serious" nature of Martinez's offense, which included pointing a gun at someone—and thereby threatening her life—in order to steal her car. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). In addition, the court stressed that Martinez hadn't "really been penalized for what [he had] done in the past." "District courts have broad leeway in deciding how much weight to give to prior crimes the defendant

has committed." *Rosales-Bruno*, 789 F.3d at 1261. And in this case, Martinez had a history that included grand theft, burglary, and larceny, among other crimes. *See* 18 U.S.C. § 3553(a)(1). This pattern of criminal behavior, the district court explained, helped to show that Martinez did not appreciate the severity of his misconduct. And one case in particular troubled the sentencing judge. There, Martinez's girlfriend instructed someone to park his car in a dimly lit area so that she could perform sexual acts on him. When the man complied, Martinez entered the car and attacked him from behind. As Martinez pistol-whipped the victim, his girlfriend used the diversion to steal the man's phone and money. After the victim escaped to confront Martinez's girlfriend, Martinez took the opportunity to drive his car to the other end of the parking lot so that he could rummage through it. When the victim returned, Martinez "again attacked" him. Martinez was sentenced only to probation and was ordered to pay deferred restitution. Because of the similarities between that crime and the instant offense—as well as Martinez's lack of appreciable punishment for the former—the district court thought that a stiff sentence was needed to "protect the public." *See id.* § 3553(a)(2)(C); *United States v. Shaw*, 560 F.3d 1230, 1239–40 (11th Cir. 2009). That determination was reasonable.

What's more, the court observed that Martinez wasn't remorseful and hadn't "fully accept[ed]" responsibility for his actions, as he contested his role in the carjacking and his possession of the firearm at the sentencing hearing. This was despite him previously admitting to the veracity of the factual proffer under oath. Those

factors, too, support the district court's upward variance. *See United States v. Kapordelis*, 569 F.3d 1291, 1318 (11th Cir. 2009). Finally, we note that "an additional sign of the upward variance's reasonableness" is the fact that Martinez's sentence was a full 5 years below the statutory maximum. *United States v. Riley*, 995 F.3d 1272, 1280 (11th Cir. 2021); *see* 18 U.S.C. § 2119(1).

In the end, "[w]e are not left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at [this] sentence." *United States v. Gibson*, 708 F.3d 1256, 1283 (11th Cir. 2013) (quotation marks omitted). It was within "the range of reasonable sentences dictated by the facts of the case." *Id.* (quotation omitted). Accordingly, Martinez's sentence is due to be affirmed.

★ ★ ★

We **AFFIRM** both Martinez's conviction and his sentence.